Gaston, J.
 

 All the law, relating to the appointment of constables, and to their qualification and giving security for their faithful performance of duty, is to be found in the 24th chapter of the Revised Statutes. The important provisions
 
 *269
 
 of this chapter, which bear upon the matter in contestation, are these: There shall not be more than one constable in each captain’s district, except that, in those districts, which include comity towns, there may be two constables. The constables are to be elected in the respective districts by the freemen thereof, in the month preceding the first term in each year of the County Court held
 
 after
 
 the first day of January, and the persons so elected shall take the oath of office, and enter into official bonds, with approved sureties, in that court. Should there be a failure in any captain’s district to elect a constable, or should any one elected constable die, or from any other cause fail to qualify and enter into the requisite bond, it shall be proper for the court which shall next happen, seven justices being present, to supply the vacancy occasioned by such failure. And upon the death or removal of a constable out of the county, in which he was elected or appointed, it shall be lawful for the justices of the County Court, seven justices being present, to appoint another person in his stead, who shall be qualified, aud act until the next election of constables. And the bonds required from constables shall be made payable to the State in the sum of four thousand dollars, conditioned for the faithful discharge of duty, and diligently endeavoring to collect claims received for collection, and faithfully paying over the sums so received unto the persons to whom the same may be due; and suits may be brought and remedy had on such bonds, in the same manner and under the same rules and restrictions as upon the official bonds of sheriffs and other officers.
 

 Ira the case of the
 
 State
 
 v
 
 Shirley.
 
 1 Ired, 597, we felt ourselves constrained to hold, that it was essential to the validity of an instrument, declared on as a constable’s bond, that it should be delivered to, or accepted by, an authorized agent of the State. The question, therefore, now presented, resolves itself into this: was there any evidence in this case, from which such delivery or acceptance could rightfully be inferred?
 

 The County Court in this case undertook to act for the State, and to accept this bond. Two objections are made to its authority, 1st, for that the power given to the County
 
 *270
 
 Court to appoint a constable, when there is a failure to elect by people, or a failure to qualify on the part of the person elected, belongs to that body,
 
 only
 
 when sitting at its pj.-gt term that may follow after the failure; and 2ndly, because no appointment of any kind was made, under which this alleged bond was executed.
 

 It seems to us that the act under consideration does not very happily or perspicuously express the will of the Legislature, and calls for a benign interpretation from the court to give effect to what we must understand to be its purpose. It contemplates that there shall be this useful officer in every captain’s district, and when such an officer shall.not be -elected, or if elected shall fail to qualify, it makes it the
 
 duty
 
 of the court to provide one without delay, “it shall be proper for the court which shall next happen as aforesaid, seven justices being present, to supply any vacancy accasion-ed by said failure.” This is not to be regarded as a special authority to make an appointment, given to the seven justices who may happen to attend at that term, which authority may be exercised or not at their discretion, but as a command imposed upon the court to be executed forthwith, provided the requisite number for executing it be present. The main purpose is to have the vacancy supplied — the next, to have it supplied without delay; and we hold it a reasonable construction of the act, and, therefore, a rightful construction, that, if, from the want of the necessary number of justices, or from inattention, this duty is not executed at the first term, not only the court may, but it is bound to, execute it at a subsequent term, provided the necessary number of justices may be had. If, therefore, in this case, it appeared that the justices had appointed this constable at the April Term, no election having been made in that district by the popular voice, wc should hold the appointment good, and the bond legally delivered, because accepted by the authorized agents of the State.
 

 But the record exhibited shews no appointment of constable then made. It states the election by the court of a county trustee, and of a treasurer of public buildings, and adds, “ On motion, S. H. Sebury was permitted to
 
 renew his
 
 
 *271
 

 bond as constable,
 
 by giving L. Garrett and Stephen Wall as securities, in the sum of $4,000;” and the case made express, that it was admitted by the parties “ that Sed-bury was not elected by the people as constable, neither was he so elected by the County Court.” It has been argued that this admission of the parties must be understood with a necessary exception, “ unless such record does, in law, constitute an appointment.” We think the argument fair, and, there'ore, view the admissiou as being thus modified. Now what may mean an order that a man “ be permitted to renew his bond as constable,” it is not a little difficult for us to pronounce, because our laws are entirely silent in regard to a proceeding of this sort. It is required of guardians “to renew their bonds every three years
 
 during the continuance of their respective guardianships
 
 ” and it is possible that the court, or the clerk who entered the order, supposed there was some similar provision with respect to constables. But, be this as it may, the renewal of a bond given in any character necessarily implies, that the character has been previously conferred and is still continuing, and cannot, without violence, be tortured into the making of an original appointment conferring that character. We are disposed to make every reasonable allowance for the wretched manner in which records of this kind are kept — an evil growing worse and worse every year, and threatening consequences most injurious
 
 to
 
 the community — but we must remember that, as this is a record, and, therefore, imports absolute truth, we must understand it according to its terms, and not change its sense by conjecture. The County Court, therefore, did not appoint Sedbury constable; and he was not elected constable by the people. The court, therefore, bad no authority to take a bond from him as constable, and the instrument declared on as such was not accepted by any authorized agent for the State.
 

 We hold it unnecessary to enter into the discussion, which has been had at the bar, as to the validity of acts done by officers
 
 de facto,
 
 who were not officers
 
 de jure,
 
 or the responsibility of persons undertaking to act as officers who are not such. This action is not brought personally against
 
 *272
 
 Sedbury. nor to enforce any liability which the common law imposes. It is an action given by Statute upon bonds taken under the provisions of a Statute, and will not lie upon instruments, purporting-to be bonds, but which that Statute does not authorize.
 

 We cannot refrain from expressing our regret at the inconveniences resulting from those blunders, which cause men, who are not officers, to be held out to the world as effectually deserving confidence, because bound by oath and bonds to a faithful discharge of duty; but with us it is a vain regret. We must administer the law as it. is. The remedy, if there be one, is committed by the constitution to other hands.
 

 The judgment of the Superior Court must be affirmed.
 

 Per Curiam, Judgment affirmed.